[Crim. No. 4686.   First Dist.   Div. Three.   June 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD KAYE HENDERSON, Defendant and Appellant.

Daniel L. Mitchell, under appointment by the District Court of Appeal, and Ellsworth & Mitchell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was convicted of first degree murder and sentenced to life imprisonment. His principal contention on appeal is that certain statements made by him were improperly admitted at trial. He also contends the trial

judge should have directed the jurors to exclude from their consideration all newspaper and other extrajudicial reports concerning the case, and finally that the trial court erred in an instruction to the jury relating to the voluntary nature of certain statements made by him to the authorities.

This is appellant's third appeal. At his first trial, he waived a jury, entered a plea of guilty and was sentenced to life imprisonment. On appeal, that judgment was reversed by stipulation of all parties because appellant had been permitted to discharge his counsel, withdraw his plea of not guilty, and to enter a plea of guilty while not represented by counsel. (Pen. Code, § 1018.) On appellant's second trial a jury found him guilty of murder in the first degree and imposed the death penalty. On appeal, the Supreme Court reversed that judgment (*People* v. *Henderson,* 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677]) and remanded the case for a new trial. At appellant's third trial he entered pleas of not guilty and not guilty by reason of insanity. A jury again found him guilty of first degree murder. He then withdrew his plea of not guilty by reason of insanity and received the sentence of life imprisonment from which he now appeals.

We need not relate the facts of the case. They are fully set out in the decision of the Supreme Court previously cited. They disclose a brutal and sadistic homicide. As there noted, appellant admitted in open court that he killed the victim. He also confessed the killing to his half-sister. In the record before us, it is clearly established also that the day after the killing appellant consulted and was advised by two lawyers in San Jose, and later, on the same day, consulted with and was advised by the Public Defender of Alameda County. When he surrendered to the Alameda County sheriff he was accompanied by the assistant public defender as his counsel, and also by an investigator for that office. According to appellant, all three attorneys advised him ". . . to answer no questions pertaining to anything whatsoever."

A few minutes after appellant was placed in custody he was taken to the district attorney's office. The district attorney questioned him at length concerning his whereabouts when the crime was committed, his knowledge of the deceased and his possible connection with the crime. Appellant avoided answering all questions that tended in any way to connect him with the commission of the offense. His typical reply was: "I refuse to answer on advice of counsel." He did, however, answer certain questions regarding a black eye

he had at the time, his residences, past and present, places of employment and similar biographical data.

Appellant's attorney was not present during interrogation by the district attorney. Appellant made no request for his attorney. The district attorney did not warn him that he had a right to have his attorney present during the interrogation, or that his statements might later be used against him, or that he had a constitutional right to remain silent.

At trial, one theory of defense was that of diminished responsibility not amounting to legal insanity, as described in such cases as *People* v. *Wells,* 33 Cal.2d 330, 343-357 [202 P.2d 53]; *People* v. *Gorshen,* 51 Cal.2d 716, 733 [36 P.2d 492], and *People* v. *Henderson, supra,* 60 Cal.2d 482, 490-491. To meet this defense the prosecution offered and, over appellant's objection, the court received in evidence, a transcript of appellant's interrogation by the district attorney. On appeal appellant contends it was error to receive such evidence because he was denied the assistance of counsel at all stages of the proceedings, in violation of the Sixth Amendment to the United States Constitution as interpreted by *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

█ We think the trial court properly admitted into evidence the transcript of appellant's interrogation by the district attorney. The transcript is not a confession. It contains no admissions that serve to connect appellant with the offense. As we have noted, all such inquiries were met with a refusal to answer on the advice of counsel. But the transcript does show, and the district attorney argued the point to the jury, that as early as 24 hours after the murder, appellant possessed sufficient acumen to distinguish accurately between those questions, the answer to which might tend to incriminate him, and those which would not. Thus the evidence was relevant to appellant's defense of diminished responsibility. There can be no question but that it had a proper place in the evidence unless the interrogation itself was conducted in such a manner as to violate appellant's constitutional right to counsel, and his right to remain silent.

In *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354, our Supreme Court considered the admissibility of a confession obtained by authorities during the investigation of a murder. The court, following the path of *Escobedo* v. *Illinois, supra,*

378 U.S. 478, declared that a confession, obtained from a suspect without counsel, was not admissible in evidence where "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." Of course, no confession is involved here. Nevertheless the admissibility of appellant's statements must be tested by the *Dorado* rule because certain of appellant's responses must be considered as "incriminating" in character since they tended to annul his defense of diminished responsibility. They were offered in evidence for that purpose, and it was argued by the prosecution that they had that effect.

The record refutes appellant's assertion that he was not fully informed of his right to remain silent during interrogation by the district attorney. Appellant was the object of a wide search after discovery of the body of the victim and before appellant's surrender. While this was in progress he consulted three lawyers. All told him to remain silent and not to answer questions. Thus, before he was given over into custody he was prepared for the examination which his lawyers anticipated. He was furnished with a proper and adequate reply to questions by his inquisitors. A further warning on the part of the district attorney would have been superfluous. Appellant knew of his right to remain silent. He acted on the advice of his attorneys in refusing to answer any question relating to the homicide—in sum, he had been informed of his constitutional rights, fully understood the advice and took every advantage of it.

The right to remain silent may be waived. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 352.) Here appellant, fully aware of his right to remain silent and exercising that right as to all questions, the reply to which might in any way connect him with the offense, waived that right in giving responses to those questions which seemed to have no relevance to the homicide.

Appellant argues, in effect, however, that he had a right to have his counsel at his side during the entire interrogation by the district attorney. As we have previously said, appellant had counsel before he was placed in custody. He was prepared for his interrogation by his lawyers before being

taken to the sheriff's office. Yet appellant made no request to have his counsel present during the examination, nor did his counsel make any such request. On this record we must hold that appellant waived any right he may have had to have counsel present during questioning by the district attorney.

■ Nevertheless, even if it could be held that it was error to admit into evidence the transcript of appellant's interrogation, appellant suffered no prejudice. We are not treating here with a confession, as the court was in *Dorado*, or with admissions or incriminating statements that might serve to connect appellant with the commission of the offense. Hence, if error occurred, the question of prejudice must be considered. It is clear that appellant suffered no prejudice. He testified in his own behalf. He admitted he killed the victim. His half-sister testified that the morning after the killing appellant confessed the crime to her and described many of its details. He showed her the beer can opener with which he mutilated the body. Powerful evidence was also given by a Mrs. Hammer, who testified that appellant committed a like assault upon her, from which she suffered grave injury. The assault upon Mrs. Hammer differed from the assault that took the life of the victim here primarily in degree rather than method. Thus there was a great deal of evidence, aside from appellant's statements during his interrogation, from which the jury could conclude that he had formed the intent necessary for murder in the first degree. It is therefore not more probable that a different result would have been reached had the transcript of appellant's interrogation been excluded. The error here, if any, was not prejudicial. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243].)

■ Appellant complains also of the testimony of Officer DiSalvo, reporting two conversations with appellant. Officer DiSalvo had some slight acquaintance with appellant before his arrest. He was asked by Alameda County authorities to interview appellant. DiSalvo first talked to appellant two days after appellant had been placed in custody. He testified he told appellant that anything appellant said might be used against him. Appellant told DiSalvo that the public defender's office was representing him and that he had been advised not to make any statement to anybody. DiSalvo testified further that, in the conversation, appellant said in effect that he must have committed the homicide, but that he refused to talk on his lawyer's advice, because he felt he had

a better chance of getting second degree, or even manslaughter, if he remained silent.

We see no error in the admission of this testimony. Appellant was fully aware of his rights. He cannot now complain that he did not heed his lawyer's advice to remain silent, but instead voluntarily chose to respond to DiSalvo's questions. Nor can appellant successfully claim a denial of the right to counsel at the time he made his statements to DiSalvo. In that interview he told DiSalvo that he was represented by the public defender, and that all his lawyers had told him not to talk. Despite this knowledge he made the statements testified to by the officer. We think under these circumstances appellant waived any right he may have had to have his attorney present during his interview by Officer DiSalvo.

About four months after appellant's arrest he wrote to Officer DiSalvo and requested that the officer visit him. DiSalvo complied with this request. During their conversation appellant made statements clearly admitting that he committed the homicide. The officer testified to such statements. Again appellant claims error in that he was not told of his right to counsel or of his right to remain silent.

This contention is wholly without merit. DiSalvo's second visit was at appellant's request, not at the request of the authorities. No interrogation was involved here. It may be that appellant felt some compulsion to talk about his crime. If so, he was free to talk to anyone who would listen, and without regard to the presence or absence of his counsel. Indeed, such a situation was referred to and discussed in *People* v. *Dorado, supra*, at page 354 (footnote), and statements made under such circumstances were said to be admissible in evidence.

Appellant argues that the trial court committed error in not instructing the jury *sua sponte* on the reading of newspaper articles and other extrajudicial statements concerning the trial. To support this argument appellant refers to numerous newspaper articles reporting the trial and quotes portions of such articles or their headlines. None of those reports are in the appellate record, and therefore such references may not be considered by us on this appeal. It does appear in the record, however, that four of the jurors when called admitted reading about the case in the newspapers. Nevertheless, such jurors were questioned and accepted by appellant. They were not challenged for cause, nor did appellant seek to remove them by peremptory challenge, as he might have done. He used only four of his peremptory

challenges. At the commencement of jury selection the trial judge told the prospective jurors: "Some of you already indicated that you know something about this case because you read about it. We are particularly concerned that the question of notoriety shall not enter into any aspect of this case, and it is your duty to make sure that this shall be a fair and impartial trial with all of the rights of all parties preserved."

After the jury had been selected, and while trial was in progress, the judge instructed the jury and made reference to the subject of newspaper reports, saying: "You will again remember that this trial is concerned only with the guilt or innocence of the defendant on trial, that no one else is on trial and that it is our function here to see that justice is done in this case, to the best of our ability, whatever the end result might be." At the conclusion of the trial the judge specifically instructed the jury to be governed solely by the evidence introduced at the trial, and not to be ". . . governed by sentiment, conjecture, sympathy, passion, prejudice, public opinion or any other factor other than the evidence and the law." Thus the record shows that the jury was properly charged as to its duties and responsibilities in the case. Further instruction was unnecessary.

■ Finally, appellant objects to this instruction given to the jury: "The fact that a defendant was under arrest at the time he made a statement or that he was not at any time represented by counsel or that he was not told that any statement he might make could or would be used against him or that he was told that others had made statements implicating him in the crime, will not render such statement involuntary."

Appellant cites both *Escobedo* and *Dorado* and reargues the admissibility of the statements he made to the district attorney and to Officer DiSalvo. The instruction merely recites supposed facts, which, if present, do not necessarily render statements of a defendant involuntary. But the exclusionary rule established by the *Escobedo* and *Dorado* cases does not depend upon the voluntary character of statements made by a defendant in a criminal case. The rule is based upon the defendant's constitutional right to remain silent and to have counsel. Thus, even voluntary statements of an accused person may be excluded from evidence if obtained by authorities in violation of such person's constitutional rights, unless, as here, such rights are waived. Moreover, as far as appellant is concerned, he has never contended that his statements

made to the district attorney and to Officer DiSalvo were involuntary. His contention throughout has been that his statements were elicited by the authorities in violation of his constitutional right to remain silent and to have counsel. Thus, even if the questioned instruction be deemed to contain error, which we do not find, appellant has suffered no prejudice.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

A, petition for a rehearing was denied July 23, 1965.